In re COMMERCIAL FINANCIAL SERVICES, INC., and CF/SPC NGU, Inc., Debtors.

Commercial Financial Services, Inc., Plaintiff,

v.

Jay L. Jones, Defendant.

Bankruptcy Nos. 98–05162–R, 98–05166–R.

Adversary No. 99–0005–R.

United States Bankruptcy Court, N.D. Oklahoma.

April 21, 2000.

Larry M. Wolfson, Jerry L. Switzer, Jr., Jenner & Block, Chicago, IL, Neal Tomlins, Ronald E. Goins, Tomlins & Goins, Tulsa, OK, Jay Geller, Law Office of Jay S. Geller, Portland, ME, for plaintiff.

Andrew Turner, Timothy Trump, Conner & Winters, P.C., Tulsa, OK, for defendant.

*MEMORANDUM OPINION REGARD-
ING DEFENDANT'S MOTION TO
DISMISS AND MOTION TO AB-
STAIN, AND RECOMMENDATION
TO DISTRICT COURT REGARD-
ING DEFENDANT'S MOTION TO
WITHDRAW THE REFERENCE*

DANA L. RASURE, Bankruptcy Judge.

## I. Procedural history

On December 11, 1998, Plaintiff Commercial Financial Services, Inc. ("CFS") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. CFS is a debtor in possession pursuant to 11 U.S.C. § 1107. On January 11, 1999, CFS filed its Complaint For Turnover of Property of Debtor's Estate and Other Relief against Jay L. Jones ("Jones") alleging that he had executed a demand note, that CFS has made demand for payment of the note, that Jones has failed and refused to honor the demand for payment, that CFS is entitled to recover from Jones under 11 U.S.C. § 542 and under a breach of contract cause of action, and further that all claims made by Jones against the estate should be disallowed under 11 U.S.C. § 502(d) (the "Complaint"). Adversary Docket # 1 ("Doc. 1").

On February 24, 1999, Jones filed a Motion to Withdraw the Reference and Brief in Support Thereof (the "Motion to Withdraw Reference"). Doc. 6. In his Motion to Withdraw Reference, Jones argues that he is entitled to a jury trial, that he does not consent to this Court conducting a jury trial, and thus the reference of this matter to this Court must be withdrawn by the district court. CFS responded to the Motion to Withdraw Reference on March 16, 1999. Doc. 10. CFS contends that Jones may not ultimately be entitled to a jury trial and that withdrawal of the reference is therefore premature. On March 26, 1999, Jones filed a Reply to CFS' Response to Motion to Withdraw Reference ("Reply Brief"). Doc. 13.

Contemporaneously with the Reply Brief, Jones filed an Answer to the Complaint and demanded a jury trial ("An-swer"). Doc. 16. In his Answer, Jones admits that he executed the note, denies that advances were made to him under the note, admits that CFS's records indicate that advances were made to him or for his benefit, admits that CFS has made demand for payment, and admits that he has refused to pay the indebtedness. In his Answer, Jones also states, as an affirmative defense, that "Jones may be owed money by CFS which may be set-off or recouped against any amount that he may owe to CFS." Answer at 3. Jones contends that his assertion of the affirmative defenses of setoff and recoupment has not resulted in a waiver of a right to jury trial. *See* Reply Brief at 3.

Also on March 26, 1999, Jones filed a Motion to Abstain Combined with Brief in Support Thereof ("Motion to Abstain") (Doc. 14) and a Motion to Dismiss Combined with Brief in Support Thereof (Doc. 15) ("Motion to Dismiss"). Except in connection with the relief sought, the legal argument underlying these motions is substantively identical.

In the Motion to Dismiss, Jones argues that CFS's claims under Section 542(b) and 502(d) of the Bankruptcy Code should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable to this proceeding by Bankruptcy Rule 7012) for failure to state valid bankruptcy claims. Jones maintains that under the facts pleaded, CFS cannot obtain relief pursuant to Section 542(b) of the Bankruptcy Code because Section 542(b) may only be asserted by a debtor to obtain turnover of the payment of a debt when "there is no dispute or defense asserted by the obligor." *Id.* at 2. In this case, Jones contends that although he has not had an opportunity to review and conduct discovery on the allegations against him, "[s]everal of the listed charges on their face do not appear correct. The amount claimed by CFS is by no means liquidated at this point in time." *Id.* at 3. Further Jones states that he "may also assert substantial

setoffs. These setoffs would reduce or completely eliminate any obligation under the note referenced in the Complaint." *Id.* Jones also contends that by asserting a turnover claim under Section 542, which Jones believes "mirrors" the breach of contract claim, CFS's Complaint is "a transparent attempt to maintain federal jurisdiction that is not supported by any real substance." *Id.* at 1–2.[1] Thus, he argues, the Section 542(b) turnover claim is not a valid claim for relief (and arguably was not asserted in good faith).

With respect to the Section 502(d) disallowance claim, Jones asserts that "[a]s there is no legitimate turnover claim stated, . . . there is no basis to disallow any claims which may be made by Jones in the CFS bankruptcy case." Motion to Dismiss at 4. Jones contends that he has not filed any claims against the estate, and that if Jones files a claim, CFS may object. *See id.* at 4.

In the Motion to Abstain, Jones reiterates his analysis of the impropriety of the claims; he concludes that the federal claims should be dismissed because the Section 542(b) claim is unliquidated, disputed and subject to defenses, that the Section 502(d) claim is premature and dependent upon the survival of the Section 542(b) claim, and that the remaining claim is "non-core" and controlled by state law. Jones thus argues that this Court should abstain in the interest of justice and comity. Since there is no parallel state lawsuit pending between these parties, abstention would result in the dismissal of the entire proceeding.

On April 26, 1999, CFS filed a combined response to the Motion to Abstain and the Motion to Dismiss. Doc. 21. CFS maintains that it has stated three valid claims for relief and therefore dismissal is inappropriate; that discretionary abstention is not warranted under the multi-factor examination courts perform in considering abstention; and that its claims under Section 542(b) and 502(d) are core matters over which this Court has jurisdiction to render a final determination.

Jones's requests for dismissal, abstention and withdrawal of the reference are alternative requests for relief. The focus of Jones's motions is his argument that *this* Court cannot adjudicate CFS's claims against him because (1) the title 11 claims must be dismissed and the remaining claim—a non-core state law breach of contract claim—should properly be determined by a state court, and (2) he desires a jury trial, but does not consent to this Court conducting such trial, and thus the proceeding must be tried in another court. Determining the scope of this Court's jurisdiction over this adversary proceeding is fundamental to the resolution of all motions before the Court.

## II. Jurisdiction to entertain the motions

Federal court jurisdiction over bankruptcy cases and proceedings is established pursuant to Section 1334 of title 28 of the United States Code. District courts have original and exclusive jurisdiction of bankruptcy cases (cases that arise under title 11). *See* 28 U.S.C. § 1334(a). District courts have original but non-exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to a title 11 case, notwithstanding any statute that otherwise confers exclusive jurisdiction on a court other than the district court. *See* 28 U.S.C. § 1334(b). Further, district courts have exclusive jurisdiction over property of the debtor and property of the estate. *See* 28 U.S.C. § 1334(e).

█ Jones contends that CFS's claims under 11 U.S.C. §§ 542 and 502(d) are not valid bankruptcy claims but are in reality state law contract claims. Pursuant to Section 1334(b) of title 28 of the United States Code, the district court clearly has jurisdiction over all CFS's claims, regard-

---

1. In his Answer, Jones admits that the federal district court has jurisdiction over this matter but denies that the bankruptcy court has jurisdiction. *See* Answer at ¶ 1.

less of their characterization, in light of the undisputed fact that this proceeding is *related to* the bankruptcy case because its outcome may have an effect on the resources available for distribution to creditors of the estate. *See* 28 U.S.C. § 1334(b); *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990) (proceeding is *related to* bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy") (internal quotes and citation omitted). Jones admits that the district court has jurisdiction over this proceeding.

Section 157(a) of title 28 of the United States Code provides, however, that the district court may refer to bankruptcy courts any or all proceedings arising under title 11, or arising in or *related to* a case under title 11. *See* 28 U.S.C. § 157(a). On July 10, 1984, the District Court for the Northern District of Oklahoma did in fact refer to the bankruptcy judges in this district all title 11 cases and proceedings "in, under or related to" title 11 cases, including, without limitation, "[s]tate law claims or causes of action of the kind referred to at Title 28 U.S.C. § 1334(c)(2)."[2] Rule B–5 of the District Court Rules for Bankruptcy Practice and Procedure, Misc. Order No. M–128, dated April 11, 1985. This Court therefore has jurisdiction of this proceeding pursuant to Section 157(a) and Rule B–5 because this is a proceeding in, under and/or related to CFS's bankruptcy case.

**2.** Section 1334(c)(2) provides—

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section [1334], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2). While Section 1334(c)(2) may require the district court to abstain from hearing proceedings based upon

Because this is a "related to" proceeding, even if the claims under title 11 were dismissed, this Court would still have subject matter jurisdiction over the contract claim to the same extent as the district court has jurisdiction.[3] And even though Jones believes that this Court should abstain from hearing this proceeding in deference to the state court and state law, his request for abstention does not rob this Court of jurisdiction—the court may choose to refrain from exercising jurisdiction. Or it may choose to exercise jurisdiction. Or it may recommend that the reference of the proceeding to the bankruptcy court be withdrawn by the district court. The presence of circumstances warranting abstention or withdrawal does not impair this Court's subject matter jurisdiction over proceedings referred to it by the district court.

### III. Scope of jurisdiction over CFS's breach of contract claim

Jones does not allege that CFS's Complaint fails to state a claim for relief for breach of contract, and the Court finds that CFS has properly pleaded such a claim. The Complaint alleges that Jones executed a note payable to CFS (a copy of which was attached to the Complaint), that CFS made a demand for payment pursuant to the terms of the note (a copy of which is also attached to the Complaint), that Jones failed to make such payment, and that CFS has been damaged thereby.[4]

> state law claims under certain circumstances, the presence of those circumstances does not mean that jurisdiction is lacking. Abstention is a decision to refrain from exercising jurisdiction; a court must have jurisdiction to affirmatively decline it.

**3.** The *scope* of this Court's jurisdiction—*i.e.*, whether the Court may enter final orders or may only submit recommended findings of fact and conclusions of law to the district court—is a separate issue that is addressed in Section III of this opinion.

**4.** The Court may consider the attached note and demand letter as part of the Complaint in determining the motion to dismiss. *See* 5A C.

If CFS proves these allegations, it may be entitled to relief from Jones.

■ Ordinarily, a state law breach of contract claim asserted by a debtor against a defendant who has not filed a claim against the estate does not fall within the "core" jurisdiction of this Court, and therefore this Court could not yield a binding final order with respect to such claim. *See* 28 U.S.C. § 157(b); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("*Marathon*"). Congress lacks constitutional power to grant final adjudicative authority to Article I courts, such as bankruptcy courts, except in connection with federally created–or "public"–rights. *See Marathon*, 458 U.S. 50, 80–86, 102 S.Ct. 2858, 2876–80 *passim* (Brennan J., plurality opinion) and 458 U.S. at 90–92, 102 S.Ct. at 2881–82 (Rehnquist, J. and O'Connor, J. concurring opinion).[5] *Marathon* established that "Con-

Wright and A. Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1357 (1990), at n.1, and cases cited therein.

5. The Supreme Court has not defined the universe of "public rights" and "private rights," but has indicated examples of what are and are not public or private rights, as well as the extent of Congress's authority in assigning the power to vindicate such rights to Article I and Article III courts.

In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court summarized a line of such cases as follows:

"Our prior cases support administrative factfinding in only those situations involving 'public rights,' *e.g.*, where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract, and property cases, as well as a vast range of other cases, are not at all implicated." [*Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 458, 97 S.Ct. 1261, 1270, 51 L.Ed.2d 464 (1977)].

\* \* \*

In *Crowell* [*v. Benson*, 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932)], we defined "private right" as "the liability of one individual to another under the law as defined" . . . in contrast to cases that "arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." [Citations omitted].

\* \* \*

[In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69, 102 S.Ct. 2858, 2870, 73 L.Ed.2d 598 (1982) ], we rejected the view that "a matter of public rights must at a minimum arise 'between the government and others.' " [citation omitted]. We held, instead, that the Federal Government need

not be a party for a case to revolve around "public rights." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S., at 586, 105 S.Ct., at 3335, *id.*, at 596–599, 105 S.Ct., at 3341–3343 (BRENNAN, J., concurring in judgment). The crucial question, in cases not involving the Federal Government, is whether "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Id.*, at 593–594, 105 S.Ct., at 3339–3340. *See id.*, at 600, 105 S.Ct., at 3343 (BRENNAN, J., concurring in judgment) (challenged provision involves public rights because "the dispute arises in the context of a federal regulatory scheme that virtually occupies the field"). If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court.

\* \* \*

"[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a 'public right,' but the latter obviously is not." [*Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871 (BRENNAN, J., plurality opinion) ].
*Granfinanciera*, 492 U.S. at 51–56 & n.12, 109 S.Ct. at 2795–98 & n.12.

At this juncture, the scope of public rights includes rights created by Congress under a constitutional grant of power which fall within a valid federal regulatory scheme. Public rights may be adjudicated by an Article I court with limited Article III court involvement, *i.e.*, appellate review. Private rights,

gress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985). "[S]tate-law causes of action for breach of contract or warranty are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 56, 109 S.Ct. 2782, 2798, 106 L.Ed.2d 26 (1989).

■ When a defendant sued by a debtor in possession asserts a claim against the estate, however, the bankruptcy court's equitable jurisdiction to adjust the debtor-creditor relationship is invoked. The "restructuring of debtor-creditor relations ... is at the core of federal bankruptcy power." *Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871. *See also Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), which held—

> by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction.

which include, but are not limited to, rights between private citizens that are created by state law, may not be finally determined by Article I courts.

The corollary concept central to the *Granfinanciera* decision is that a party who has no connection to a proceeding under a valid regulatory scheme (a bankruptcy case, for ex-

*Id.* at 44–45, 111 S.Ct. at 331 (citations omitted).

The Court takes judicial notice of the fact that Jones has not filed a proof of claim. Jones has, however, asserted the defense of setoff and/or recoupment. In his moving papers, Jones states that CFS is "obligated to make distributions to Jones to pay [certain] taxes" under an agreement between Jones and CFS wherein CFS has purportedly agreed to pay the tax on the taxable income of the S corporation (CFS) of which he is a shareholder. Motion to Abstain at 4; Motion to Dismiss at 3. Jones contends that his defense of setoff and/or recoupment is not a "claim" because he is asserting it only for the purpose of reducing or eliminating the estate's recovery against him in the event the estate prevails.

### 1. Effect of asserting setoff defense

Setoff against a claim of the estate, whether asserted as a counterclaim or a defense, is governed by Section 553 of the Bankruptcy Code which provides—

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
>
> (1) the claim of such creditor against the debtor is disallowed....

11 U.S.C. § 553(a)(1).

■ In *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.),* 82 F.3d 956 (10th Cir.1996), the Tenth Circuit Court of

ample) is insulated from adjudication of an otherwise private right by the Article I court to which the regulatory scheme is assigned (the bankruptcy court), notwithstanding that Congress created a federal right under the regulatory scheme that has the same essential features as the private right. Private rights cannot be converted into public rights

Appeals, addressing the doctrine of setoff, stated—

> Under 11 U.S.C. § 553, a creditor may setoff " 'a mutual debt owing by such creditor to the debtor' so long as both debts arose before commencement of the bankruptcy action and are indeed mutual." *Davidovich*, 901 F.2d at 1537 (*quoting* 11 U.S.C. § 553(a)).
>
> \*\*\*\*\*
>
> In *Davidovich*, this court held that setoff requires that "each debt be valid and enforceable." 901 F.2d at 1537.

*Id.* at 963–64. *See also Farmers Home Administration v. Buckner (In re Buckner)*, 218 B.R. 137, 145 (10th Cir. BAP 1998) ("If a prepetition right to setoff exists under nonbankruptcy law, § 553(a) only authorizes a creditor to setoff 'valid and enforceable' prepetition debts owed by it to the debtor against 'valid and enforceable' prepetition claims owed by the debtor to the creditor. . . . The debts and claims in question must be 'mutual,' *i.e.*, 'between the same parties standing in the same capacity.' ") (citations omitted). In bankruptcy, recoupment and setoff against claims of a debtor are permitted in very narrow circumstances. *See Conoco, Inc.*, 82 F.3d at 959; *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155, 157–58 (10th Cir.1986). Both recoupment and setoff are equitable doctrines that, in the final analysis, require the weighing of equities by a court.[6]

▮▮▮▮ Setoff is predicated upon the defendant, Jones, having a "valid and enforceable" prepetition claim against CFS.[7] Jones alleges that he is entitled to distributions from CFS under an alleged contract, which he seeks to set off (or recoup) against CFS's claims against him. By pleading setoff as an affirmative defense, Jones is in fact asserting a claim against *the estate's right to recover from Jones*, which itself is property of the estate. *See* 11 U.S.C. § 541(a) (estate includes all legal and equitable interests of the debtor as of the commencement of the case, as well as interests in property that the estate acquires after the commencement of the case). Not only is Jones asserting a claim, his claim is treated as a *secured* claim, resulting in his claim, if proven and allowed, being satisfied in full, and in real dollars as opposed to "tiny bankruptcy dollars,"[8] to the extent that CFS recovers against him. *See, e.g., Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984) ("In bankruptcy, setoff and recoupment play a role very different from their original role as rules of pleading. Setoff, in effect, elevates an unsecured claim to secured status to the extent that the debtor has a mutual, pre-petition claim against the creditor. Setoff is limited, however, by the provi-

---

as against strangers to the regulatory scheme.

**6.** Both setoff and recoupment, when asserted against a claim of a debtor in bankruptcy, require a strict examination of the equities particular to bankruptcy cases. *See Conoco, Inc.*, 82 F.3d at 960–61. The general tenets of bankruptcy law that claimants should be treated equally and claimants who have harmed the estate should not recover from the estate may be weighed in determining whether setoff or recoupment should be permitted. *See id.*

**7.** Jones will bear the burden of establishing a "right to offset a mutual debt" under nonbankruptcy law. *See, e.g., Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir.1996) ("the burden of proving an enforceable right of setoff rests with the party

asserting the right"), *citing Federal Nat'l Mortgage Ass'n v. County of Orange (In re County of Orange)*, 183 B.R. 609, 615 (Bankr. C.D.Cal.1995). A defendant has the burden of proving all elements of its affirmative defense. *See Hooks v. Ward*, 184 F.3d 1206, 1217 n.6 (10th Cir.1999) ("Traditionally the burden of proving an affirmative defense falls on the party asserting the affirmative defense"), *citing Oklahoma Radio Assocs. v. FDIC*, 987 F.2d 685, 693 (10th Cir.1993) (*citing Paul v. Monts*, 906 F.2d 1468, 1474 (10th Cir.1990)); *Jackson v. Robertson*, 763 F.2d 1176, 1183 (10th Cir.1985).

**8.** *See In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 160 B.R. 882, 893 n.25 (Bankr.S.D.N.Y.1993) (" 'Tiny bankruptcy dollars' refers to the postpetition, prorata distribution of estate assets

sions of 11 U.S.C. § 553."). Jones's claim, if proven and allowed, would reduce the recovery CFS would obtain for distribution to unsecured creditors.

Jones argues that because he does not intend to seek an affirmative recovery from the estate, he has not asserted a claim. In essence, he argues that his set-off right is contingent upon CFS recovering on its claim against Jones. Under Sections 101(5) and 553 of the Bankruptcy Code, mutual debts/claims sought to be setoff may be contingent. *See, e.g., Buckner*, 218 B.R. at 147 (the terms "debt" and "claim" in Section 553 are synonymous and both terms are interpreted broadly to include contingent obligations); *see also* 11 U.S.C. § 101(5).[9] The contingency of a claim against the estate does not affect its status as a claim.

Jones cites *Styler v. Jean Bob Inc. (In re Concept Clubs, Inc.)*, 154 B.R. 581 (D.Utah 1993) ("*Concept Clubs*"), in support of his argument that he has not invoked the equitable powers of the bankruptcy court or waived his right to jury trial by pleading setoff or recoupment as affirmative defenses. *See* Reply Brief at 4 ("[I]t is very clear that Jones' jury trial demand has merit. Jones has not waived this right. *See In re Concept Clubs*, ...."). *Concept Clubs* is not binding on this Court.

In *Concept Clubs*, the district court reasoned that the defendant's defense of setoff did not seek an "affirmative recovery" from the bankruptcy estate, but merely sought a reduction in the amount owed by the defendant to the estate. Hence, the court reasoned, raising setoff as an affirmative defense did not assert a claim

against the estate, did not invoke the claims allowance process, and consequently did not affect the defendant's jury trial rights. In so concluding, the district court relied primarily on a Tenth Circuit Court of Appeals case that held that a defendant who asserts setoff as a defense need not file a proof of claim. *Id.* at 588–89, *citing Turner v. United States (In re G.S. Omni Corp.)*, 835 F.2d 1317, 1319 (10th Cir.1987).

This Court disagrees with the court's conclusion in *Concept Clubs*.[10] First, the assertion of setoff, whether as a defense or as a counterclaim, clearly invokes the claims allowance process. Section 553, which governs setoff against the estate, condones setoff against the estate *only* if the claim asserted against the estate is not disallowed. *See* 11 U.S.C. § 553(a)(1). It is within the exclusive equitable province of this Court to determine whether Jones's claim should be disallowed before permitting setoff against CFS's claim against Jones. *See* 28 U.S.C. § 157(b)(2)(B) (the allowance and disallowance of claims against property of the estate is within the core jurisdiction of bankruptcy courts). *Cf. Sullivan v. Town & Country Home Nursing Services, Inc. (In re Town & Country Home Nursing Services, Inc.)*, 963 F.2d 1146, 1153 (9th Cir.1991) (asserting setoff against estate property, even without filing a proof of claim, waives objection to bankruptcy court jurisdiction and waives sovereign immunity).

Further, from a logical and equitable standpoint, a defendant cannot assert that he and the debtor have "mutual debts and claims" for the purpose of setoff without asserting a claim against the estate. The distinction between asserting setoff as a

---

to holders of allowed claims") (citations omitted).

**9.** "[C]laim" means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent*, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an *equitable remedy* for breach of performance if such breach gives rise to a right to payment, whether or not such right to

an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added).

**10.** The Court notes that except for the final step in the *Concept Clubs* court's analysis, in which the district court holds that because a proof of claim need not be filed by a setoff claimant, setoff is not a "claim," the Court finds the *Concept Clubs* analysis compelling.

defense and asserting setoff as a claim is one without a difference insofar as the evidence required to be presented to prove the defendant's alleged right to setoff (proof of a prepetition valid and enforceable claim against the estate) and the prerequisites that must be satisfied to permit setoff against a claim of the estate (*i.e.,* that the defendant's claim is not disallowed).

Further, the Court disagrees that the *Turner* case dictates the conclusion that pleading setoff as a defense does not invoke the claims allowance process just because a proof of claim need not be filed. The Tenth Circuit characterized its holding in *Turner* as follows: "[F]iling a proof of claim is not a prerequisite to assertion of a right to setoff under 11 U.S.C. § 553." *Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1539 (10th Cir.1990). One logical reason for excusing the requirement of a timely filed proof of claim is to prevent injustice when a defendant who did not timely file a proof of claim is later sued by the estate. In *Davidovich,* the Tenth Circuit concluded that a right of setoff survived discharge, notwithstanding that the setoff claimant did not file a proof of claim in the bankruptcy case, because setoff, which is an equitable concept, prevents unfairness in "deny[ing] a creditor the right to recover an established obligation while requiring the creditor to fully satisfy a debt to a debtor." *Id.* at 1539. The only effect of *Turner's* holding in this case is that Jones may not barred from prosecuting his setoff claim just because he failed to file a proof of claim prior to the claims bar date set by this Court.

The distinction between setoff as a defense and as a counterclaim is rooted in state procedural statutes and their predecessor rules of common law pleading. *See, e.g., Lee v. Schweiker,* 739 F.2d 870, 875 & n. 5 (3d Cir.1984). When asserting a right of setoff against a bankruptcy estate's claim, however, substantive federal bankruptcy law overrides state procedural rules. *See* U.S. CONST., ART. VI, cl. 2.

(supremacy clause). Under Section 553 of the Bankruptcy Code, Congress established the extent to which bankruptcy law preempts setoff law and procedure under non-bankruptcy law. In examining Section 553 in *Turner,* the Tenth Circuit found that an entity's right of setoff against the estate is *limited* by the provisions of the Code that require relief from the automatic stay and provisions that regulate the disallowance of claims, but is not limited by the provisions of Code that require the filing of a proof of claim in order for the underlying claim which is sought to be set off to be allowed. *See Turner,* 835 F.2d at 1318. The Tenth Circuit concluded that in certain circumstances, such as in the assertion of setoff, the process of allowing and disallowing a claim against the estate may be initiated without the filing of a formal proof of claim. *Turner* does not support the view that setoff is not a "claim" and thus its assertion as a defense does not invoke the equity jurisdiction of the bankruptcy court.

This Court fails to see a distinction between obtaining something of value from the estate by filing a claim and obtaining something of value from the estate, *i.e.,* discharge of all or a portion of a debt to CFS, by asserting setoff as a defense. In both cases, the estate may be diminished and Jones may be enriched. Nor can the Court comprehend how asserting the defense of setoff does not seek the restructuring of debtor-creditor relations between CFS and Jones in the most classic sense. Setoff, by its very definition, requires mutual *debts and claims.* 11 U.S.C. § 553(a). Jones has "trigger[ed] the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp,* 498 U.S. at 44, 111 S.Ct. at 331. By alleging a right of setoff, Jones has chosen to participate (albeit in a limited manner) in the allocation of the bankruptcy estate.

The Court further notes that various strategies employed by defendants who have been sued by debtors to avoid the

408

consequences of asserting a claim against a bankruptcy estate (i.e., invoking the bankruptcy court's equitable jurisdiction and waiving jury trial right) have been rebuffed by the federal courts. *See, e.g., In the Matter of Peachtree Lane Assoc., Ltd.,* 150 F.3d 788, 799 (7th Cir.1998) (counterclaim expressly designated "conditional" and filed only after defendant was sued by trustee did not preserve jury trial right); *Travellers Int'l AG v. Robinson,* 982 F.2d 96, 99–100 & n. 14 (3d Cir.1992), *cert. denied,* 507 U.S. 1051, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993) (creditor that files a contingent claim specifically reserving right to jury trial has submitted to bankruptcy court's equitable jurisdiction); *In re Hooker Investments, Inc.,* 937 F.2d 833, 838–39 (2d Cir.1991) (rejecting argument that defendant should be able to delay filing proof of claim until adversary proceeding is resolved so that defendant would not have to choose between filing a claim against the estate and its right to jury trial). Regardless of the disguise under which a claim is asserted, and regardless of the intent of a party to preserve a right to jury trial, the Court must look to the substance of the assertion to determine whether the claims allowance process has been invoked.

The Court concludes that by asserting the defense of setoff, Jones has asserted a breach of contract claim against the estate and invoked the bankruptcy court's core jurisdiction to determine his claim and his right to setoff pursuant to Section 553 of the Bankruptcy Code. Upon the assertion of a claim against CFS's right to recover from Jones, this proceeding became a part of the claims allowance process and "integral to the restructuring of the debtor-creditor relationship." *Langenkamp,* 498 U.S. at 44, 111 S.Ct. at 331. The Court concludes that it has "core" jurisdiction

over the CFS's breach of contract claim and Jones's setoff defense pursuant to 28 U.S.C. § 157(b)(2)(B) and (O).[11] The Court further concludes that according to *Langenkamp,* Jones has waived his right to jury trial on the breach of contract claim. *Id.* at 45, 111 S.Ct. at 331 (jury trial waived upon asserting claim against the estate).

### IV. Motion to Dismiss pursuant to Rule 12(b)(6)

Jones alleges that CFS has failed to state a claim for turnover under Section 542(b) of the Bankruptcy Code because he disputes the amount of the alleged debt owed by him to CFS and because he has asserted defenses. Jones also alleges that because the turnover claim must be dismissed, CFS's Section 502(d) claim, which is dependent upon the success of the turnover claim, must also be dismissed for failure to state a claim.

In evaluating a motion to dismiss for failure to state a claim, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to" CFS. *Summum v. Callaghan,* 130 F.3d 906, 913 (10th Cir.1997) (internal quotes and citations omitted). "[O]nly when it appears that [CFS] can prove no set of facts in support of the claims that would entitle [it] to relief" may the Court dismiss the complaint, or any claim pleaded therein. *Id.* (quotes and citations omitted). Dismissal is appropriate if there is a showing "on the face of the complaint [that there is] some insuperable bar to relief." *United States v. Uvalde Consolidated Independent School District,* 625 F.2d 547, 549 n.1 (5th Cir.1980), *cert. denied,* 451 U.S. 1002, 101 S.Ct. 2341, 68 L.Ed.2d 858 (1981), *quoting* C. Wright, Law of Federal Courts, 3d ed.,

---

11. Core proceedings include, but are not limited to—

\* \* \*

(B) allowance or disallowance of claims against the estate . . .;

\* \* \*

(O) other proceedings affecting the liquidation of the assets of the estate or the

adjustment of the debtor-creditor or the equity security holder relationship. . . .

28 U.S.C. § 157(b)(2)(B) and (O).

at 322. *See also* 5A C. Wright and A. Miller, Federal Practice & Procedure: Civil 2d § 1357 (1990), at n.47, and cases cited therein.

### 1. *Turnover claim*

CFS alleges that it is entitled to an order from this Court requiring Jones to turn over money owed on the note pursuant to Section 542(b), which provides—

(b) Except as provided in subsection (c) [providing protection for good faith transferors without notice or knowledge of the bankruptcy] or (d) [concerning transfers associated with life insurance] of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b).

██ The parties' efforts (and many courts' efforts) in resolving this issue have focused on whether a bankruptcy court may liquidate a *disputed* debt in a turnover action before ordering turnover, equating the liquidation with a traditional non-core contract action. Circuit and lower courts that have written on the issue are split in result and diverse in reasoning. For example, compare *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.),* 913 F.2d 1575, 1579 (11th Cir.1990) (turnover proceedings cannot be used to liquidate disputed contract claims), to *Hoffman v. Connecticut (In re Willington Convalescent Home, Inc.),* 850 F.2d 50, 52 n.2 (2d Cir.1988), *aff'd,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) ("The mere fact that [defendant] denies that it owes the matured debt for [debtor's] services because of a recoupment right does not take the trustee's action outside the scope of section 542(b)") (internal quotes and citations omitted). *Cf. Craig v. McCarty Ranch Trust (In re Cassidy Land and Cattle Co.),* 836 F.2d 1130 (8th

Cir.), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988) (action by debtor on note and mortgage was a core turnover proceeding).

Taking the position that a debt that is property of the estate must be liquidated and undisputed in order to be subject to the equitable remedy of turnover are: *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),* 172 B.R. 748, 759 (S.D.N.Y. 1994) ("An action for turnover of property is core when its purpose is the collection rather than the creation, recognition or liquidation of a matured debt") (internal quotes and citation omitted); *Shields v. Stangler (In re Stangler),* 186 B.R. 460, 465 (Bankr.D.Minn.1995) (Section 542(b) should be interpreted to permit an action for turnover only if debts are matured, payable on demand, or on order, and "not subject to any nonbankruptcy defenses other than set off"); *Ven-Mar of Indian River, Inc. v. Hancock (In re Ven-Mar Int'l Inc.),* 166 B.R. 191 (Bankr.S.D.Fla. 1994) (this court was bound by the Eleventh Circuit *Charter* case, *supra,* to conclude that only undisputed debts can be the subject of a turnover order); *Staats v. Adolfson & Peterson, Inc. (In re Statewide Pools, Inc.),* 126 B.R. 877 (Bankr.S.D.Ohio 1991) (and cases cited therein) (state-law contract disputes cannot be resolved in a turnover proceeding); *Satelco, Inc. v. North American Publishers, Inc.,* 58 B.R. 781, 789 (Bankr.N.D.Tex.1986) (pursuing a disputed prepetition state-law contract claim by invoking equitable remedy of Section 542 was outside the jurisdiction of the bankruptcy court); *Taxel v. Commercebank (In re World Financial Services Center, Inc.),* 64 B.R. 980, 986 (Bankr. S.D.Cal.1986) (agreeing with *Satelco* analysis); *Chick Smith Ford, Inc. v. Ford Motor Credit Co. (In re Chick Smith Ford, Inc.),* 46 B.R. 515 (Bankr.M.D.Fla.1985).

Courts adhering to the plain language of Section 542(b), which does not on its face require that the debt be undisputed in order to be subject to the equitable remedy of turnover are: *Kenston Man-*

*agement Co. v. Lisa Realty Co. (In re Kenston Management Co.),* 137 B.R. 100, 107–08 (Bankr.E.D.N.Y.1992) ("it is not relevant that [all] the defendant[s] dispute the existence of the debt by, perhaps, denying the complaint's allegations, as long as these allegations state the existence of a mature debt") (internal quotes and citations omitted); *Nuckols and Assoc. Security, Inc. v. Bouchard Transp. Co. (In re Nuckols and Assoc. Security, Inc.),* 109 B.R. 294, 296 (Bankr.S.D.Ohio 1989) (collection of "ordinary course of business accounts receivable" may be accomplished through a Section 542(b) action); *Miller v. BTS Transport Services (In re Total Transp., Inc.),* 87 B.R. 568, 574 (D.Minn. 1988) (and cases cited therein) (rejecting argument that a debt is not matured or payable on demand because of a bona fide dispute) (*citing Calhoun v. Copeland Corp. (In re Gordons Transps., Inc.),* 51 B.R. 633, 636 (Bankr.W.D.Tenn.1985)); *Corzin v. Rawson (In re Rawson),* 40 B.R. 167, 170 (Bankr.N.D.Ohio 1984) ("The mere fact that the defendants deny these allegations [of a matured debt] does not take the trustee's action outside the scope of section 542(b)").[12]

With respect to CFS's Section 542(b) claims, the Court finds that the statute is clear and unambiguous that the debt need only be matured, payable on demand, or payable on order—it contains no requirement that the debt be undisputed or liquidated. In this Court's Memorandum Opinion Regarding Defendants' Motion to Dismiss or Abstain and Recommendation to District Court Regarding Defendants' Motion to Withdraw the Reference, entered contemporaneously herewith in the companion case of *Commercial Financial Services, Inc. v. William Bartmann, et al.,* 251 B.R. 414, the Court determined that the relevant inquiry in assessing whether Section 542(b) may be asserted by a debtor when liability on the debt is disputed is whether the defendant has invoked the equitable jurisdiction of the bankruptcy court.

In *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), the Supreme Court summarized its prior relevant decisions on this issue as follows:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S., at 58–59, and n. 14, 109 S.Ct., at 2799–2800, and n. 14 (citing *Katchen, supra,* 382 U.S., at 336, 86 S.Ct., at 476). If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. *Granfinanciera, supra,* 492 U.S., at 57–58, 109 S.Ct., at 2798–2799.... If a party does not submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial.

*Id.* at 44–45, 111 S.Ct. at 331.

In the *Bartmann* case, this Court concluded that if a defendant has not filed a proof of claim, or otherwise invoked the process of claims allowance and disallowance or the adjustment of debtor-creditor relationships, the bankruptcy court does not have core jurisdiction over a turnover action, notwithstand-

---

**12.** American Law Reports (Federal) contains two annotations collecting cases on both ends of the spectrum and all points in between at 124 A.L.R.Fed. 531 (1995) ("Action for Collection of Account Receivable as Core Proceeding in Bankruptcy Under 28 U.S.C.A. § 157(b)") and 123 A.L.R.Fed. 103 (1995) ("Action for Breach of Contract as Core Proceeding in Bankruptcy Under 28 U.S.C.A. § 157(b)").

ing that the jurisdictional statute, 28 U.S.C. § 157(b)(2)(E), specifically provides for core jurisdiction over "orders to turn over property of the estate."[13] The Court further concluded that because the Bartmanns had not filed proofs of claim, or otherwise invoked the Court's equitable jurisdiction to allow and disallow claims or adjust debtor-creditor relationships, this Court did not have jurisdiction over the claims CFS asserted against Bartmanns.[14] In contrast, in this case, Jones has asserted a setoff claim against estate property, invoking the Court's equitable jurisdiction, resulting in this Court acquiring core jurisdiction to adjudicate CFS's turnover claim and Jones's setoff defense without a jury pursuant to Section 157(b)(2)(E).[15]

### 2. Section 502(d) claim

▇ Section 502(d) provides in pertinent part—

> [T]he court shall disallow any claim of any entity from which property is recoverable under section 542 ... of this title, unless such entity ... has paid the amount, or turned over such property, for which such entity ... is liable under section ... 542 ... of this title.

11 U.S.C. § 502(d).

Jones contends that (1) the Section 502(d) claim should be dismissed because it presupposes a valid Section 542 claim, and Jones believes the Section 542 claim should be dismissed; and (2) Section 502(d) presupposes that Jones asserts a claim against the estate, an act which Jones denies. The first contention fails because the Court has found that CFS's Section 542 claim may proceed. The second contention fails because Jones has asserted a setoff claim against the estate in his Answer. Further, the Court concludes that it is *possible* that Jones may acquire and assert claims in the future, either by assignment, or otherwise, or he may assert a claim for administrative expenses.

### V. Motion to Withdraw Reference

Motions for withdrawal of reference are governed by 28 U.S.C. § 157(d) ("Section 157(d)"), Rule B–6 of the District Court Rules, and Rule 5011 of the Federal Rules of Bankruptcy Procedure. Section 157(d) provides—

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The second sentence of Section 157(d)— the mandatory withdrawal provision—does not apply in this proceeding because CFS's

---

13. The adjudication of turnover proceedings, when they involve private rights against persons *not* participating in the bankruptcy scheme, cannot be constitutionally delegated to the bankruptcy courts, notwithstanding that 28 U.S.C. § 157 purports to assign all core proceedings, including turnover actions, to the bankruptcy court. *See, e.g., Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 54–58, 109 S.Ct. 2782, 2797–99, 106 L.Ed.2d 26 (1989).

14. The Bartmanns, however, have not yet answered the Complaint. If they assert a setoff counterclaim or defense, they too will have invoked the equitable jurisdiction of this Court and will have waived jury trial rights.

15. Section 542(b) explicitly anticipates that the entity owing a debt may be a creditor of the estate by providing that the entity's claim may be setoff against its debt under Section 553 of the Bankruptcy Code. *See* 11 U.S.C. § 542(b). Congress provided bankruptcy courts with the power to determine the extent of claims by *and* against the estate, to determine setoff claims under Section 553, to disallow claims if appropriate under other sections of the Bankruptcy Code (a power emanating from Section 553), and to enter an injunctive turnover order under its equitable jurisdiction, which may be exercised under 28 U.S.C. § 157(b)(2)(E), as against those who have affirmatively chosen to affect the magnitude of the bankruptcy estate.

claims do not implicate federal laws other than title 11 of the United States Code. Therefore, if Jones has shown "cause" for withdrawal, the district court has discretion to either withdraw the reference or permit the bankruptcy court to hear the matter and submit proposed findings of fact and conclusions of law.

Rule B–6 provides in relevant part—

A particular proceeding commenced in ... the Bankruptcy Court shall be transferred to the District Court for hearing and trial by a District Judge only in accordance with the procedure below:

(1) A party seeking such transfer shall file a motion therefor in the Bankruptcy Court certifying one or more of the following grounds:

\* \* \*

(F) Cause exists, within the contemplation of 28 U.S.C. § 157(d), for the withdrawal of the particular proceeding to this District Court (a specification of such alleged cause must be stated).

\* \* \*

(6) The motion for transfer, together with a written recommendation of a Bankruptcy Judge, shall be transmitted by the Clerk of the Bankruptcy Court to the Clerk of the District Court. The latter shall assign the motion to a District Judge who shall rule *ex parte* or upon such notice as the District Judge shall direct. The ruling shall be filed in the Bankruptcy Court as an order of the District Judge.

(7) In instances where such ruling is not dispositive of the particular proceeding transferred, the proceeding shall go forward to hearing, trial and judgment as the District Judge's order shall direct.

Under the District Court's local rules, Jones's burden is to show "cause" within the contemplation of 28 U.S.C. § 157(d).

■■■■■ "Cause" is a case-specific term. Generally, in determining whether the alleged "cause" is sufficient to warrant withdrawing the reference of the matter to the bankruptcy court, district courts should consider factors such as "judicial economy, convenience, and the particular court's knowledge of the facts," promoting uniformity and efficiency of bankruptcy administration, reducing forum shopping, and conserving debtor and creditor resources, as well as whether parties are entitled to a jury trial, and whether the claims involved are "core" bankruptcy proceedings. *In re Sevko, Inc.,* 143 B.R. 114, 117 (N.D.Ill. 1992). *See also Trustees of the UMWA Combined Benefit Fund v. Westmoreland Coal Co. (In re Westmoreland Coal Co.),* 221 B.R. 512 (D.Colo.1998).

Jones's only assertion of cause is his claimed right to a jury trial. In light of this Court's finding that Jones has invoked the equitable jurisdiction of the bankruptcy court and has waived his jury trial right, the fact that this Court has core jurisdiction over all claims and defenses, and the bankruptcy court's interest in maintaining uniformity in the discovery process,[16] the Court recommends that the

---

**16.** The Court advises the district court that in light of the complexity of the underlying bankruptcy cases, the massive discovery that has been conducted and is being conducted under Bankruptcy Rule 2004, and the existence of at least eleven federal lawsuits focused upon the propriety of the securitizations that financed operations of CFS in which discovery from CFS may be sought, this Court has entered certain discovery management orders in order to consolidate and expedite discovery, control CFS's privileges and the extent of any waiver thereof, minimize duplication and costs attendant to discovery to the estate and all interested parties, and otherwise carefully manage discovery taken by and requested from CFS and other parties in interest in the CFS bankruptcy case.

On October 1, 1999, the Court entered an Order Authorizing and Establishing Procedures for Discovery Pursuant to Bankruptcy Rule 2004, which established a Rule 2004 discovery plan including timetables and pro-

district court deny the Motion to Withdraw Reference..

## VI. Request for Abstention

Jones requests that this Court voluntarily abstain from adjudicating this proceeding under 28 U.S.C. § 1334(c)(1)—the permissive (or discretionary) abstention provision of this jurisdictional statute.

Section 1334(c)(1) states:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

■■■■ Abstention is "an extraordinary and narrow exception to the duty of the federal courts to adjudicate controversies which are properly before it." *See, e.g., S.N.A. Nut Co. v. Haagen–Daz Co. (In re S.N.A. Nut Co.)*, 206 B.R. 495, 501 (Bankr.N.D.Ill.1997), *quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). "Abstention is the exception rather than the rule." *Id., citing In re Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993); *see also Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 713 (9th Cir.

1999). As the party moving for permissive abstention, Jones has the burden of establishing that abstention is appropriate under 28 U.S.C. § 1334(c)(1). *See S.N.A. Nut Co.*, 206 B.R. at 501.

■■■■ The well-worn list of factors that bankruptcy courts consider in deciding whether to abstain was originally established in *Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.)*, 81 B.R. 422, 428–29 (Bankr.S.D.Tex.1987). *See also Chicago, Milwaukee, St. Paul & Pacific*, 6 F.3d at 1189, *citing Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir.1990) (adopting *Republic Reader's* factors). These considerations include (1) the effect that abstention would have on the efficient administration of bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the federal jurisdictional basis of the proceeding; (6) the degree of relatedness of the proceeding to the main bankruptcy case; (7) the substance of asserted "core" proceeding; (8) the feasibility of severing the state law claims; (9) the burden the proceeding places on the bankruptcy court's docket; (10) the likelihood that

---

cedures for obtaining documents and testimony from sixty-nine individuals and entities, and establishing depositories for such documents and transcripts ("Rule 2004 Order"). *See* Docket # 1346 in Bankruptcy Case No. 98–05162–R. CFS and Jones are both subject to the Rule 2004 Order. Some discovery from Jones may have already occurred under Rule 2004 Order.

Further, on February 18, 2000, this Court entered its Order Granting in Part CFS's Motion for Protective Order ("Order Granting Motion for Protective Order") (Docket # 1958), which is incorporated into Protective Order No. 2 Governing Limited Waiver of Privileges by Commercial Financial Services, Inc., entered March 9, 2000 ("Protective Order No. 2") (Docket # 1999). In the Order Granting Motion for Protective Order, this Court concluded that it has exclusive jurisdiction over property of the estate, including

information and documents possessed or controlled by the estate, and intangible rights related thereto such as CFS's privileges; that discovery addressed to CFS is subject to 11 U.S.C. § 362(b) and parties who are not before this Court are required to obtain modification of the automatic stay prior to issuing discovery requests to CFS; that Protective Order No. 2 governs CFS's privileges and the limited waivers thereof; and that this Court retains jurisdiction to enforce or modify Protective Order No. 2 as justice requires. Protective Order No. 2 governs all discovery requested from CFS.

In light of these discovery management orders, which are applicable to discovery in this adversary proceeding, the Court believes that in any event, discovery in this proceeding should occur under the supervision of this Court.

commencement of the proceeding in bankruptcy court involves forum shopping by one of parties; (11) the existence of a right to jury trial; and (12) the presence of nondebtor parties in the proceeding.

 This Court sees no compelling reason to abstain. Importantly, because there is no parallel state proceeding in which this matter might be litigated, abstention would effectively amount to a dismissal, which would unnecessarily require CFS to begin proceedings anew. Also in absence of parallel state proceedings, the consideration of comity for or deference to state courts evaporates. The state law claims are rudimentary breach of contract claims; the more difficult issues arise under federal bankruptcy law. This Court's docket allows for the prosecution of the proceeding in the bankruptcy court. In any event, discovery by Jones from CFS must proceed according to the discovery management orders entered by this Court. There has been no request for severance of claims. CFS's state and federal claims, and Jones's setoff claim, should be determined contemporaneously and in the same forum as a proceeding of allowance and/or disallowance of claims. This Court has core jurisdiction over all claims and Jones has waived his jury trial right.

The Court concludes that none of the *Republic Reader's* factors suggest that abstention is appropriate. Therefore, this Court declines to abstain from, and consequently dismiss, this proceeding.

### VII. Conclusion

Because this Court has core jurisdiction of all claims asserted against Jones, as well as Jones's setoff defense, and because Jones is not entitled to a jury trial, the Court recommends that the district court deny Jones's Motion to Withdraw Reference. As the Court has determined that CFS's Section 542(b) and 502(d) claims as pleaded would entitle CFS to relief if proven, Jones's Motion to Dismiss is denied. Further, because this Court is the most appropriate forum in which to adjust CFS's and Jones's mutual claims, Jones's Motion to Abstain is denied. A separate order denying the Motion to Dismiss and Motion to Abstain will be issued contemporaneously with this Memorandum Opinion and Recommendation.

The Clerk of the Bankruptcy Court shall transmit a copy of this written recommendation to the Clerk of the United States District Court for the Northern District of Oklahoma, together with copies of the Motion to Withdraw Reference, Motion to Dismiss, Motion to Abstain, and all other pleadings referred to in this memorandum opinion and recommendation, and file a certificate of such transmission in this proceeding.