In re IRIDIUM OPERATING LLC, Iridium Capital Corp., Iridium IP LLC, Iridium LLC, Iridium Roaming LLC, Iridium (Potomac) LLC, and Iridium Promotions, Inc.

Statutory Committee of Unsecured Creditors on behalf of Iridium Operating LLC, Iridium Capital Corp., Iridium IP LLC, Iridium LLC, Iridium Roaming LLC, Iridium (Potomac) LLC, Plaintiff,

v.

Motorola, Inc., Defendant.

Bankruptcy No. 99–45005 (CB).
Adversary No. 01–02952.
No. 01 Civ. 9270(WHP).

United States District Court,
S.D. New York.

Sept. 23, 2002.

Diane Harvey, Weil, Gotshal & Manges, LLP, New York City, for Plaintiffs.

Douglas K. Mayer, Wachtell, Lipton, Rosen & Katz, New York City, for Defendants.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

This adversary proceeding arises from the bankruptcy proceedings of Iridium Operating LLC, Iridium Capital Corp., Iridium IP LLC, Iridium LLC, Iridium Roaming LLC, and Iridium (Potomac) LLC, (collectively "Iridium" or the "Iridium Companies"). Plaintiff, the Statutory Committee of Unsecured Creditors for the bankruptcy estates of the Iridium Companies (the "Committee"), filed this adversary proceeding on behalf of the Iridium Companies' estates against Motorola, Inc. ("Motorola"), a creditor of the Iridium Companies, alleging various state and federal bankruptcy law claims. Motorola moves to withdraw the reference of this adversary proceeding from the bankruptcy court to this Court, and transfer venue of this case to the District of Arizona. For the following reasons, Motorola's motions are denied.

### Background

Iridium was initially created as a subsidiary of Motorola to develop a global satellite telephone communication system known as the Iridium System. The Iridi-

um System utilized a constellation of sixty-six low-Earth orbit satellites and a network of "gateway" surface facilities in various countries. (Complaint ¶¶ 17–18; Declaration of Mark Borota dated Sept. 24, 2001, ("Borota Decl.") ¶¶ 4–5, 7.) Motorola eventually spun Iridium off into a separate business entity owned by key investors and the public in 1993. (Memorandum of Law in Support of Motorola, Inc.'s Motion to Withdraw the Reference and Transfer to the United States District Court for the District of Arizona ("Motorola Br.") at 3.) Prior to spinning Iridium off, however, Motorola signed a series of contracts with Iridium concerning the design, construction and launch of the Iridium System. (Borota Decl. ¶ 5; Compl. ¶ 3.)

One such contract that Iridium and Motorola entered into was the "Space System Contract," which provided the basis for the design, construction and launch of the Iridium System's space-based components. (Borota Decl. ¶ 7 & Ex. A Space System Contract ("Space System Contract"); Compl. ¶ 39.) The Space System Contract contemplates Iridium paying Motorola approximately $3.45 billion in exchange for Motorola's design, development, production and delivery of the space segment of the Iridium System into orbit. (Compl. ¶ 39; Motorola Br. at 4.) The Committee makes several allegations concerning Motorola's dual role in negotiating the contract as Iridium's parent corporation and signatory to the contract, and the resulting unfairness of the terms of the Space System Contract to Iridium. These include, *inter alia*, provisions in the Space System Contract that Motorola would retain title to key components of the Iridium System, that severely limit Iridium's right to inspect Motorola's work in progress, and that limit Motorola's liability in the event the Iridium System was not operational to $100 million. (Compl. ¶¶ 37–45.) The Committee also alleges that Motorola

breached a non-compete clause in the Space System Contract by producing and making another global satellite system without Iridium's written permission. (Compl. ¶¶ 43–44.)

Further, the Space System Contract contained a choice of law and forum selection clause. That clause provided that any dispute arising under or in connection with the Space System Contract shall be construed in accordance with Arizona law, and venue for any dispute shall be in Arizona. (Space System Contract at 31.) Motorola contends that the work for the Space System Contract was almost exclusively performed in Arizona, including the system design, hardware and software development, and construction of the satellite constellation and gateway infrastructure. (Borota Decl. ¶¶ 12–15.)

Prior to Motorola's spin-off of Iridium, Motorola and Iridium also executed an Operations and Maintenance Contract ("O & M Contract") dated July 29, 1993. The O & M Contract provided that Motorola would perform certain services in connection with the operation and maintenance of the Iridium System's space segment, including upgrading hardware and software necessary to maintain certain performance levels, in exchange for Iridium's payment of what Iridium claims was $2.89 billion over the five year period contemplated by the contract. (Compl. ¶ 46; Declaration of Amy R. Wolf dated Dec. 20, 2001, ("Wolf. Decl.") Ex A. Motorola's Proof of Claim ("Motorola's Proof of Claim") at 3–4.) Notably, the O & M Contract's term began immediately following the completion of the Iridium Space System Contract. (Compl. ¶ 46; Motorola's Proof of Claim at 3–4.)

In 1999 Iridium was highly leveraged and struggling to make interest payments and meet certain financial covenants to

senior note holders. (Declaration of Douglas K. Mayer dated Oct. 8, 2001, Ex. A Affidavit of F. Thomas Tuttle dated August 16, 1999, ("Tuttle Decl.") at 3–5.) By early August 1999, after having received several waivers on the financial covenants and interests payments, Iridium was in default of its commitments. (Tuttle Decl. at 4–6.) On August 13, 1999, certain Iridium bondholders filed an involuntary Chapter 11 petition against the Iridium Companies in the Southern District of New York. (Harvey Decl. Ex. D Involuntary Petition of Iridium; Tuttle Decl. at 5–6.) The bondholders chose the Southern District of New York as venue for the petition because Iridium had assets of $240 million in cash and various securities on deposit at The Chase Manhattan Bank in New York. (Harvey Decl. Ex. E Declaration of Valerie Dunbar dated Nov. 7, 2001.) The involuntary petition was filed after Iridium disclosed to these creditors its intent to file a voluntary Chapter 11 petition in the District of Delaware; where Iridium was incorporated. (Tuttle Decl. at 5–6.) As they previously planned, the Iridium Companies filed their voluntary petitions in Delaware later in the day on August 13, 1999. (Tuttle Decl. at 5–6.)

As a result of the dueling sets of bankruptcy petitions, an issue arose about the proper venue of the bankruptcy petition, but the parties consented to transferring the District of Delaware proceedings to the Southern District of New York. (Motorola Br. at 7; Statutory Committee of Unsecured Creditors' Opposition ("Comm. Op.") at 6–7.) Thereafter, Bankruptcy Judge Cornelius Blackshear of the Bankruptcy Court for the Southern District of New York, determined that venue was proper in the Southern District under 28 U.S.C. §§ 1408 and 1409, and ordered the Delaware cases transferred to New York. (Harvey Decl. Ex. F Order for Relief Under Chapter 11 and Transferring Delaware Cases to this Court dated Sept. 13, 1999.)

Subsequent to the filing of the bankruptcy petitions, the Committee conducted an investigation into potential claims that Iridium may have had against Motorola. (Comm. Op. at 7.) In that regard, on December 17, 1999, Judge Blackshear granted the Committee's motion authorizing it to conduct discovery of Motorola and former Iridium employees, pursuant Rule 2004 of the Bankruptcy Rules, including depositions and certain production of documents. (Harvey Decl. Ex. G Order Authorizing the Official Committee of Unsecured Creditors to Proceed with Discovery of Motorola and Certain Others Under Bankruptcy Rule 2004 dated Dec. 17, 1999.)

On February 11, 2000, Motorola filed several Proofs of Claim against Iridium in the bankruptcy proceeding. (Harvey Decl. Ex. J; Wolf Decl. Ex. A (collectively "Proofs of Claim").) Motorola's claims against Iridium included, (1) indemnification and contribution pursuant to Article 20 of the Space System Contract and Article 17 of the O & M Contract, for losses not yet ascertainable from various lawsuits; and (2) amounts due under certain contracts between Motorola and Iridium, including the O & M Contract. (Proofs of Claim Annex at 2–12.) Further, Motorola reserved its rights to file administrative claims against the estates of the Iridium Companies. (Proofs of Claim Annex at 13.)

On March 15, 2000, Judge Blackshear permitted the Committee to file an adversary proceeding against Motorola on behalf of the Iridium Companies' bankruptcy estates. (Harvey Decl. Ex. I & Mayer Decl. Ex. B Order Authorizing the Official Committee of Unsecured Creditors to File an Adversary Proceeding against Motorola, Inc. on behalf of the Chapter 11 Estates ("Adv.Proc.Order").) Judge Blackshear

found that the Committee was "authorized to have standing and empowered to act as the representative of the Debtors for the purpose of pursuing all claims and causes of action on behalf of the Debtors as identified in the Motion ... against Motorola." (Adv. Proc. Order at 1–2.) In its motion, the Committee identified several causes of action against Motorola, including breach of contract, breach of fiduciary duty, and avoidance of fraudulent transfers/conveyances. (Harvey Decl. Ex. H Committee's Motion for Standing to Sue Motorola at 7–13 ("Comm.Mot.").) The Committee summarized these claims as follows:

> Motorola and its executives used Iridium as a vehicle to (i) fund the development and creation of the IRIDIUM System, (ii) generate billions of dollars of revenue for Motorola derived from non-arm's length contracts made with the subsidiary to build and maintain the IRIDIUM System and supply phone and paging products for customers of the System and (iii) attempt through the corporate structure of Iridium to insulate Motorola from the perceived substantial liability exposure in the likely event that the subsidiary failed to achieve its wholly unrealistic business plan.

(Comm. Mot. at 7.)

On March 2, 2001, Motorola filed claims for Administrative Expenses pursuant to 11 U.S.C. § 503. (Harvey Decl. Ex. K Request for Payment of Administrative Expense Pursuant to 11 U.S.C. § 503 ("Admin. Expense Claim").) Among these claims was a claim for "approximately $675 million in unpaid administrative expenses, based primarily on its quarterly contractual rate under the Operations and Maintenance Agreement with Iridium." (Admin. Expense Claim ¶ 2.)

On July 19, 2001, the Committee filed this action. The Complaint alleges ten causes of action, five of which are undisputably core claims under bankruptcy law, and five of which are traditionally non-core claims. The core claims of the Complaint are as follows: (1) fraudulent conveyances from Iridium to Motorola based on, *inter alia*, the payment of $3.41 billion under the Space System Contract and $5.2 million under the O & M Contract (Compl.¶¶ 72–85); (2) state law fraudulent conveyances against Motorola based on, *inter alia*, the payment of $329.8 million under the Space System Contract and $5.2 million under the O & M Contract (Compl.¶¶ 86–95); (3) fraudulent transfers from Iridium to Motorola based on, *inter alia*, the payment of $329.8 million under the Space System Contract and $5.2 million under the O & M Contract (Compl.¶¶ 96–103); (4) Preferences from Iridium to Motorola based on, *inter alia*, the payment of $329.8 million under the Space System Contract and $5.2 million under the O & M Contract (Compl.¶¶ 104–16); and (5) Equitable Subordination of Motorola's Claims (Compl.¶¶ 154–61).

The five traditionally non-core claims the Committee alleges are as follows: (1) breach of fiduciary duty and aiding and abetting breach of fiduciary duty against Motorola based on *inter alia*, self-dealing on the part of Motorola and Motorola Designated Directors of Iridium arising from Iridium's payments to Motorola under the Space System Contract (Compl. ¶¶ 117–25); (2) Usurpation of Corporate Opportunity based on Motorola's development of the Celestri System, a system with substantial similarities to the Iridium System (Compl. ¶¶ 126–31); (3) breach of the Space System Contract by failing to obtain Iridium's written consent to proceed with the Celestri System (Compl. ¶¶ 132–34); (4) breach of the implied warranty of fitness in the Space System Contract by failing to deliver to Iridium a system which

was suitable for use by the professional business traveler (Compl. ¶¶ 135–48); and (5) breach of express warranties in the Space System Contract by, *inter alia*, failing to deliver to Iridium a system which fit the express warranties, namely a fully commercial global communications system (Compl. ¶¶ 149–53).

On October 8, 2001, Motorola answered the Complaint asserting twenty-six affirmative defenses, including a defense that the Committee's claims "are barred, or should be reduced, in whole or in part, by the recoupment and/or set-off amounts owed to Motorola." (Harvey Decl. Ex. L Answer at 13.)

## Discussion

### I. Withdrawal of the Reference

▉ This adversary proceeding was automatically referred to the Bankruptcy Court for the Southern District of New York as a case arising under, or related to a case under, Title 11 of the United States Code by a standing order dated July 10, 1984. Motorola moves for an order withdrawing the reference of this adversary proceeding to the bankruptcy court pursuant to 28 U.S.C. § 157(d). Section 157(d) states, in pertinent part, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its motion or on a timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (2002).[1] As there is no statutory definition of what cause suffices for withdrawal of the reference, to determine whether "cause" is shown in the Second Circuit, this Court looks to the seminal case on that subject, namely *In re Orion*

*Pictures Corp.*, 4 F.3d 1095 (2d Cir.1993). In *Orion*, the Second Circuit stated,

> A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn.... [O]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.

*Orion*, 4 F.3d at 1101. The core/non-core analysis is paramount because while bankruptcy courts can hold jury trials in core proceedings, *see Ben Cooper, Inc. v. Insurance Company of State of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1404 (2d Cir.1990), the Seventh Amendment's Reexamination Clause and the district court's *de novo* review of a bankruptcy court's determination on a non-core claim, *see* 28 U.S.C. § 157(c)(1) (2002), prohibit a bankruptcy court from holding a jury trial in non-core matters. *Orion*, 4 F.3d at 1101. Thus, the categorization of the claims as core/non-core affects the remainder of the analysis since "[i]f a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." *Orion*, 4 F.3d at 1101. Whereas, "hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues." *Orion*, 4 F.3d at 1101.

---

1. Section 157(d) also provides for a mandatory withdrawal of the reference if "the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (2002); *accord Singer Co., N.V. v. Groz–Beckert KG (In re Singer Co., B.V.)*, No. 01 Civ. 0165(WHP), 2002 WL 243779, at *2–3 (S.D.N.Y. Feb.20, 2002). However, Motorola does not argue that this provision applies to the instant adversary proceeding.

### A. Core/Non–Core

The Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), held the 1978 Bankruptcy Act unconstitutional in that it granted non-Article III judges the power to adjudicate legal disputes that were not part of the core bankruptcy functions. *See* 458 U.S. at 71, 102 S.Ct. 2858. Congress enacted 28 U.S.C. § 157 in reaction to the Supreme Court's decision in *Marathon.* Section 157 divides claims in bankruptcy proceedings into two principal categories, "core" or "non-core." *S.G. Phillips Constructors, Inc. v. City of Burlington, Vermont (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 704 (2d Cir.1995). The bankruptcy courts have the authority to "hear and determine . . . all core proceedings arising under title 11 . . . and may enter appropriate orders and judgements, subject to review under section 158 of [title 28]." 28 U.S.C. § 157(b)(1); *accord S.G. Phillips*, 45 F.3d at 704. Bankruptcy courts do not have the authority to issue final orders in non-core proceedings. 28 U.S.C. § 157(b)(1).

■ Section 157 provides a non-exclusive list of core proceedings, including, *inter alia*, matters concerning the administration of the estate; allowance or disallowance of claims against the estate; counterclaims by the estate against persons filing claims against the estate; proceedings to determine, avoid, or recover preferences, proceedings to determine, avoid, or recover fraudulent conveyances; and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2). Section 157 also provides that a court's "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Lastly, "[m]indful of the dichotomy between the bankruptcy court's core power to restructure debtor-creditor relations and the adjudication of state-created private contract rights as established in [*Marathon*], the Second Circuit has held that the core jurisdiction of the bankruptcy courts should be given a broad interpretation that is 'close to or congruent with constitutional limits' " and that *Marathon* is to be construed narrowly. *Luan Investment, S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, Nos. 00 Civ. 7600, 00 Civ. 1257, 00 Civ. 6796(WHP), 2001 WL 826122, at *5 (S.D.N.Y. July 19, 2001), *aff'd* 304 F.3d 223 (2d Cir.2002) (quoting *U.S. Lines v. Am. Steamship Owners Mutual Protection (In re U.S. Lines, Inc.)*, 197 F.3d 631, 636–37 (2d Cir.1999)); *accord Resolution Trust Corp. v. Best Prods. Co., Inc. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir.1995) (noting that the sponsors of 1984 Bankruptcy Code revisions "repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings"); *S.G. Phillips*, 45 F.3d at 705 ("[B]oth the Supreme Court and this court have concluded that the *Marathon* holding was a narrow one and have broadly construed the jurisdictional grant in the 1984 Bankruptcy Amendments."); *Cohen v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA (In re County Seat Stores, Inc.)*, No. 01 Civ. 2966(JGK), 2002 WL 141875, at *4 (S.D.N.Y. Jan.31, 2002). The Second Circuit recently reemphasized in *Petrie Retail* that courts should "construe *Marathon* narrowly and give core proceedings 'a broad interpretation that is close to or congruent with constitutional limits.' " 304 F.3d at 229 (quoting *U.S. Lines*, 197 F.3d at 637).

■ Here, it is undisputed that five of the Committee's claims in the instant adversary proceeding are core. Motorola argues that the remaining five non-core claims are inextricably intertwined with the core claims, and thus the entire proceeding should be withdrawn from the bankruptcy court. Conversely, the Committee contends that the five non-core claims became core because of Motorola filing of proofs of claim, claims for administrative expenses, and Motorola's assertion of the affirmative defense of set-off/recoupment. This Court agrees with the Committee. The five traditionally non-core claims all concern either breaches of the Space System Contract, or fiduciary torts committed during the acts that were alleged to be the breaches of the Space System Contract. Accordingly, all of the claims in this adversary proceeding arise from the same operative facts as the core claims and Motorola's proofs of claim, administrative expenses, and affirmative defenses. Thus, they are core claims.

■ A contract action, and similarly a non-personal injury tort action, may be a core proceeding depending on "(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *U.S. Lines*, 197 F.3d at 637; *accord Luan Investment, S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 228 (2d Cir.2002). To what degree the proceeding is independent of the reorganization "hinges on 'the nature of the proceeding.'" *U.S. Lines*, 197 F.3d at 637 (quoting *S.G. Phillips*, 45 F.3d at 707); *accord Petrie Retail*, 304 F.3d at 229. "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *U.S. Lines*, 197 F.3d at

637 (citations omitted); *accord Petrie Retail*, 304 F.3d at 229.

■ Section 157's list of core proceedings includes "allowance or disallowance of claims against the estate," and "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. §§ 157(b)(2)(B) & (C). The Supreme Court has recognized that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59 & n. 14, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)). The Second Circuit has similarly noted that "when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law." *S.G. Phillips*, 45 F.3d at 705 (citing *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1389–90 (2d cir.1990)). As the Second Circuit found,

A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. *Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.* Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceed-

ing following the filing of a proof of claim.

*Manville,* 896 F.2d at 1389–90 (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987)) (emphasis in original).

It is with this understanding that the Second Circuit and courts in this district have consistently held adversary proceedings against a creditor that have traditionally been non-core to be core pursuant to §§ 157(b)(2)(B) & (C) due to the filing of a proof of claim or counterclaim of set-off/recoupment by that creditor. *See, e.g., Manville,* 896 F.2d at 1389–90 ("The adversary proceeding at issue here involves a simple objection to a proof of claim and clearly falls within the literal language of § 157(b)(2)(B)...."); *S.G. Phillips,* 45 F.3d at 705 ("[W]e believe that the determinative factor as to the bankruptcy court's jurisdiction in this case is that the [creditor] filed a proof of claim resulting in an adversary proceeding that involved the 'allowance or disallowance of claims against the estate.' "); *Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.),* 270 B.R. 108, 121–22 (S.D.N.Y.2001); *N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc. (In re N. Am. Energy Conservation, Inc.),* No. 00 Civ. 4302, 2000 WL 1514614, at \*2 (S.D.N.Y. Oct.12, 2000); *The Leslie Fay Cos., Inc. v. Falbaum (In re The Leslie Fay Cos., Inc.),* No. 97 Civ. 2244(MGC), 1997 WL 555607, at \*2 (S.D.N.Y. Sept.4, 1997); *Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.,* 132 B.R. 4, 7–8 (S.D.N.Y.1991); *Lombard–Wall Inc. v. New York City Hous. Dev. Corp. (In re Lombard–Wall Inc.),* 48 B.R. 986, 990–91 (S.D.N.Y.1985); *Caldor Corp. v. S Plaza Assocs., L.P. (In re Caldor, Inc.),* 217 B.R. 121, 128 (Bankr.S.D.N.Y.1998); *Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.),* 114 B.R. 35, 38 (Bankr.S.D.N.Y.1990); *see also Petrie Retail,* 304 F.3d at 229–30 (affirming district court's holding that proceeding was core due, in part, to plaintiff's filing of proof of claim against debtor); *176–60 Union Turnpike, Inc. v. Howard Beach Fitness Ctr., Inc.,* 209 B.R. 307, 311 (S.D.N.Y. 1997) (holding a pre-petition contract proceeding was core since creditor filed a proof of claim in bankruptcy against debtor); *Commercial Fin. Servs., Inc. v. Jones (In re Commercial Fin. Servs., Inc.),* 251 B.R. 397, 404–08 (Bankr.N.D.Okla.2000) (holding as core an adversary proceeding where the defendant sued by the debtor asserted the defense of setoff/recoupment).

■ Moreover, "[w]here a creditor of the estate files a proof of claim and the estate counterclaims against him, or where the estate brings an action against a creditor and the creditor counterclaims asserting a set-off, it is entirely appropriate for the action to be classified as a core proceeding." *Interconnect Tel. Servs., Inc. v. Farren,* 59 B.R. 397, 400–01 (S.D.N.Y. 1986) (noting that the creditor in this action did not file a proof of claim or assert a set-off defense). An adversary proceeding against a creditor who has filed a proof of claim against the estate is core because under § 157(b)(2)(B) the adversary proceeding would affect the allowance or disallowance of the creditor's claim. *See Manville,* 896 F.2d at 1389–90; *S.G. Phillips,* 45 F.3d at 705; *Winimo,* 270 B.R. at 121–22; *Pan Am.,* 132 B.R. at 7–8; *Howard Beach,* 209 B.R. at 311; *Caldor,* 217 B.R. at 128; *Mercury Masonry,* 114 B.R. at 38. In addition, claims in an adversary proceeding are tantamount to counterclaims against a creditor who filed a claim against the estate under § 157(b)(2)(C). *See Leslie Fay,* 1997 WL 555607, at \*2; *Pan American,* 132 B.R. at 7–8; *Lombard–Wall,* 48 B.R. at 990–91; *Caldor,* 217 B.R. at 128. Moreover, the creditor's assertion of a set-off/recoupment claim likewise affects the allowance or disallowance

of claims against the estate and are core under § 157(b)(2)(B). *See N. Am. Energy,* 2000 WL 1514614, at *2; *Commercial Fin.,* 251 B.R. at 405.

In the instant action, Motorola filed several proofs of claim against the Iridium Companies' estates, then the Committee filed an adversary proceeding alleging both core and non-core claims, essentially amounting to objections to Motorola's proofs of claim. Finally, Motorola filed an Answer in the adversary proceeding that asserted an affirmative defense of set-off/recoupment. Thus, based on the law as outlined above, Motorola has "submitted itself to the equitable power of the bankruptcy court to disallow its claim," *Manville,* 896 F.2d at 1389, and the non-core claims against it in the adversary proceeding become core under § 157(b)(2).

Motorola argues that even if the claims allowance process is invoked by a proof of claim or setoff defense, that does not collectively transform affirmative claims against Motorola into core proceedings. Instead, Motorola argues that a claim by claim analysis must be employed, and the cases relied on by the Committee mistakenly convert unrelated non-core claims to core claims. (Motorola Br. at 12.) Motorola argues that those cases convert all non-core claims to core if any proof of claim or claim of setoff is asserted, or treat a proceeding of mixed core and non-core claims as core if the claims are predominately core. *See, e.g., N. Am. Energy,* 2000 WL 1514614, at *2; *Commercial*

*Fin.,* 251 B.R. at 408. This Court need not decide which test is constitutionally acceptable since utilizing a claim by claim test, as urged by Motorola, nevertheless renders all of the Committee's claims against Motorola in the adversary proceeding core due to their relationship with Motorola's proofs of claim and affirmative defense of setoff.

■ Traditionally non-core claims against a creditor in an adversary proceeding will be considered core if: (1) the claim arises out of the same transaction as the creditor's proofs of claim or setoff claim, or (2) the adjudication of the adversary proceeding claim would require consideration of issues raised by the proofs of claim or setoff claim such that the two claims are logically connected. *Winimo,* 270 B.R. at 122–22; *Leslie Fay,* 1997 WL 555607, at *2; *Mercury Masonry,* 114 B.R. at 38; *Lombard–Wall,* 48 B.R. at 990–91. As previously noted, the Committee brings five claims in this adversary proceeding against Motorola that would be traditionally labeled non-core: breach of fiduciary duty and aiding and abetting breach of fiduciary duty; usurpation of corporate opportunity; breach of the Space System Contract; breach of the implied warranty of fitness in the Space System Contract; and breach of the express warranties in the Space System Contract.

One of Motorola's proofs of claim and its affirmative defense of setoff are based on Iridium's obligations and Motorola's benefits under the Space System Contract.[2]

---

2. The Committee argues further that Motorola's claims for administrative expenses for payments under the O & M Contract also deem the adversary proceeding core since, the Committee, argues if the Space System Contract was terminated then the O & M Contract would automatically terminate since the O & M Contract contemplates a working space system. (Comm. Op. at 14.) Naturally, Motorola disputes that the O & M Contract is conditioned on anything to do with the Space System Contract. (Motorola Br. at 6–7.) It is unnecessary for this Court to decide whether the O & M Contract is somehow conditioned on the Space System Contract since this Court finds that Motorola's proof of claim regarding the Space System Contract and its affirmative defense of setoff make the related adversary proceeding claims core.

Specifically, the Motorola claims seek indemnification under the Space System Contract of a yet to be determined amount.

Three of the committees traditionally non-core claims concern the interpretation of the Space System Contract between Iridium and Motorola. Those three claims involve Motorola's alleged breach of the Space System Contract by failing to obtain Iridium's written consent to proceed with the Celestri System, Motorola's failure to deliver to Iridium a system suitable for use by the professional business traveler, and Motorola's failure to deliver to Iridium a fully commercial global communications system. A fourth claim for usurpation of corporate opportunity is based on the same conduct as the breach of contract claim, namely Motorola's failure to obtain Iridium's written consent to proceed with the Teledesic transaction. The last remaining traditionally non-core claim asserted by the Committee alleges a breach of fiduciary duty based on Motorola's alleged abuse of its position as parent of Iridium in the negotiation and execution of the Space System Contract.

All of these claims involve interpretations of the Space System Contract or the same factual situation as either Motorola's proof of claim or setoff defense. Accordingly, all of these traditionally non-core claims either arise out of the same transaction as Motorola's indemnification based claims or the adjudication of these claims require consideration of issues raised by Motorola's proofs of claims such that these traditionally non-core claims are logically connected to each other and judicial economy and fairness dictate they be decided in the same forum. *See Winimo*, 270 B.R. at 121–22; *Leslie Fay*, 1997 WL 555607, at *2; *Lombard–Wall*, 48 B.R. at 991; *Mercury Masonry*, 114 B.R. at 38. Thus, considering this and the Second Circuit's in-

struction to construe *Marathon* narrowly and § 157(b)(2) broadly, all of the adversary proceeding claims against Motorola are core proceedings under §§ 157(b)(2)(B) & (C).

Motorola argues that its proof of claim arising from the Space System Contract is merely a contingent claim of indemnification and the rest of its claims are unrelated to the Space System Contract. (Motorola Br. at 4–6.) Therefore, Motorola argues, it should not be deemed to have consented to bankruptcy jurisdiction. This argument is misplaced. There is no reason to distinguish between a contingent claim and a non-contingent claim in this case. Motorola's contingent claim is not so remote to render it incapable of proof. *See Lombard–Wall*, 48 B.R. at 991. Thus, although Motorola would have this Court disregard its indemnification claim for the purposes of the core/non-core analysis, that claim is as vital as any other.

■ Motorola also contends that it only asserted the setoff claim as an affirmative defense, not a counterclaim, and "solely to avoid any claim of waiver under Bankruptcy Rule 7008(c)." (Motorola Br. at 12 n. 7.) The fact that Motorola asserted its setoff claim as an affirmative defense and not a counterclaim is irrelevant. "[R]egardless of whether a setoff is labeled an 'affirmative defense' or a 'counterclaim,' a setoff is a claim against the bankruptcy estate.... [B]y pleading setoffs in the form of 'affirmative defenses,' [creditor] has in fact asserted a claim against [debtor's] bankruptcy estate." *N. Am. Energy*, 2000 WL 1514614, at *2. Further, the fact that Motorola may have been forced by procedural rules to file its setoff defense solely to avoid losing that claim is irrelevant. *See Best*, 68 F.3d at 32; *S.G. Phillips*, 45 F.3d at 706–07.

834

Although Motorola urges this Court to disregard *North American Energy* because it is "cursory," this Court agrees with that analysis. "[A] setoff claim takes on particular importance in the context of bankruptcy, as it, in effect, 'elevates an unsecured claim to secured status to the extent that the debtor has a mutual, pre-petition claim' against the party asserting setoff, as is the case here." *N. Am. Energy,* 2000 WL 1514614, at *2 (quoting *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir. 1984) and citing *Commercial Fin.,* 251 B.R. at 405–06).

This Court also notes that this case, which involves pre-petition contract claims, among others, is very different from the factual scenario in *Marathon* and *Orion.* The defendants in *Marathon* and *Orion* were otherwise uninvolved in the underlying bankruptcy proceeding. Here, Motorola is intimately involved with the bankruptcy proceeding of the Iridium Companies. Motorola has filed several proofs of claim, several claims for administrative expenses, and a claim for setoff. The relationship this action has to the bankruptcy proceeding is more than simply a possible effect on the ultimate size of the bankruptcy estate. Indeed, this adversary proceeding can affect whether the bankruptcy should allow or disallow claims against the estate, undisputably a core action. Unlike *Marathon* and *Orion,* Motorola has not been "involuntarily subjected to having the debtor's state law claim[s] against it decided by an Article I judge." *S.G. Phillips,* 45 F.3d at 706. The Second Circuit has consistently recognized this and held that *Marathon* should be read narrowly and § 157(b)(2) broadly. *See, e.g., S.G. Phillips,* 45 F.3d at 706 ("[A]nother crucial factor distinguishing *Marathon* from the present case is that in *Marathon,* the state common-law claim arose prepetition, but the debtor brought it postpetition in bankruptcy court against a defendant who had not filed a proof of claim and had no other connection with the bankruptcy."); *Manville,* 896 F.2d at 1389–90 (holding that a pre-petition contract action was core despite *Marathon,* and noting there was one crucial distinction from *Marathon* that the creditor ignored, namely "[u]nlike the defendant in *Marathon,* [creditor] filed a proof of claim in [debtor's] Chapter 11 case"). Nor does this Court find that allowing the bankruptcy court to hear these claims as core creates an exception to *Marathon* that would swallow the rule. *Cf. U.S. Lines,* 197 F.3d at 637; *Orion,* 4 F.3d at 1102.

Thus, as the traditionally non-core claims against Motorola are related to Motorola's proof of claim and claim of setoff under the Space System Contract in that they arise from the same transactions, are logically connected to each other, and interpret the same issues, all of the claims in the adversary proceeding are core.

B. *Other Orion Factors*

▆▆▆▆ This Court's finding that the entire adversary proceeding is a core proceeding under § 157(b)(2) does not end the analysis as to whether to withdraw the reference of this proceeding from the bankruptcy court. Although the core/non-core determination is the most important factor, the other factors that need to be considered from *Orion* are (1) whether the claims are legal or equitable; (2) judicial efficiency; (3) prevention of forum shopping; and (4)uniformity in the administration of bankruptcy law. *Orion,* 4 F.3d at 1101; *In re Burger Boys, Inc.,* 94 F.3d 755, 762 (2d Cir.1996); *N. Am. Energy,* 2000 WL 1514614, at *1; *Leslie Fay,* 1997 WL 555607, at *2. With the understanding that the instant action is a core proceeding favoring denial of the motion to withdraw, this Court finds that none of the remaining

factors support a withdrawal of the reference.

A determination as to whether the claims in the adversary proceeding are legal or equitable is effectively a question of whether the defendant has a right to a jury trial on those claims. Here, however, because the adversary proceeding is core, bankruptcy courts may hold jury trials for core matters without offending the Seventh Amendment. *See Ben Cooper*, 896 F.2d at 1403–04 ("We hold, therefore, that jury trials in core proceedings in the bankruptcy court do not violate Article III."); *Orion*, 4 F.3d at 1101 (holding bankruptcy courts have authority to hold jury trials in core proceedings, but not non-core matters). Thus, whether the adversary proceeding is legal or equitable, i.e. whether Motorola has a right to trial by jury, need not be determined by this Court because the bankruptcy court has the constitutional authority to hold a jury trial in this core proceeding.

Issues of judicial efficiency and uniformity of the administration of bankruptcy law weigh against Motorola's request to withdraw the reference. The Bankruptcy Court is already intimately familiar with the Iridium Companies' bankruptcies and the special issues that their relationship with Motorola and the Space System Contract raise. Further, the consistent administration of bankruptcy law would be best served by the Bankruptcy Court adjudicating the adversary proceeding, especially when the adversary proceeding includes five traditionally core causes of action along with the five traditionally non-core causes of action. Accordingly, these factors weigh against withdrawal of the reference. *N. Am. Energy*, 2000 WL 1514614, at *2–3; *Leslie Fay*, 1997 WL 555607, at *2–3.

Finally, although Motorola makes many claims of forum shopping, and in fact moves to transfer the adversary proceeding to the District of Arizona, which is discussed *infra*, this Court does not find that these claims of forum shopping provide cause to withdraw the reference. This is particularly so where the bankruptcy court has explicitly found that the underlying bankruptcy was properly filed in the Southern District of New York. (Harvey Decl. Ex. F Order for Relief Under Chapter 11 and Transferring Delaware Cases to This Court dated Sept. 13, 1999.) Further, Motorola concedes that Iridium eventually "acquiesced" in the bondholders' choice of the Southern District. (Motorola Br. at 7.) Notably, Motorola, a large creditor of Iridium, did not move to transfer the underlying bankruptcy proceeding either.

Accordingly, because the instant adversary proceeding is core—the most important factor—and none of the other *Orion* factors support cause for withdrawal, Motorola's motion to withdraw the reference of this adversary proceeding is denied.

## II. *Motion to Transfer Venue*

Motorola also moves to transfer venue of this adversary proceeding to the District of Arizona mainly based on a forum selection clause in the Space System Contract, the convenience of the parties and the location of witnesses.

 Where a party seeks to transfer venue for a core proceeding the applicable statute is 28 U.S.C. § 1412. *Renaissance Cosmetics, Inc. v. Development Specialists Inc.*, 277 B.R. 5, 18 (S.D.N.Y. 2002); *Tultex Corp. v. Freeze Kids, LLC*, 252 B.R. 32, 35–36 (S.D.N.Y.2000); *M.D. Sass Re/Enterprise Partners v. Cargill Fin. Servs. Corp.*, No. 93 Civ. 7414(TPG), 1994 WL 97335, at *1 (S.D.N.Y. Mar.18, 1994); *Goldberg Holding Corp. v. NEP Prods., Inc.*, 93 B.R. 33, 34 (S.D.N.Y.

1988). Section 1412 states, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." The interest of justice aspect of the analysis under § 1412 is a "broad and flexible standard which must be applied on a case by case basis." *Manville*, 896 F.2d at 1391; *In re Vienna Park Properties*, 125 B.R. 84, 87 (S.D.N.Y.1991). Such an analysis requires consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness. *Manville*, 896 F.2d at 1391; *Urban v. Hurley*, 261 B.R. 587, 591 (S.D.N.Y.2001). Further, whether to grant such a motion to transfer is within this Court's discretion. *Manville*, 896 F.2d at 1391; *Urban*, 261 B.R. at 591; *Vienna Park*, 125 B.R. at 87.

■ Motorola argues that the forum selection clause in the Space System Contract mandates transfer of the case to the District of Arizona, as does the convenience of the parties and witnesses. The forum selection clause provides as follows:

> This Contract and any dispute arising under or in connection with this Contract, including any action in tort, shall be construed in accordance with and governed by the laws of the State of Arizona except for its choice of laws rules. Venue for any dispute not resolved by the parties shall be in Arizona except for its choice of laws rules.

(Space System Contract at 31.) Motorola further contends that, *inter alia*, the location of operative facts underlying this adversary proceeding, the convenience of the parties, specifically Motorola, the location of witnesses, and the location of documents all favor transfer to Arizona because that is where Motorola performed all of its obligations under the Space System Con-

tract. (Motorola Br. at 23–29.) Specifically, Motorola avers that it performed its obligations under the Space System Contract solely out of its Chandler, Arizona facility, that the bulk of the material Motorola witnesses are in Arizona and cannot be subpoenaed in New York, and that most of the original documents concerning the negotiation and performance of the Space System Contract are located in Arizona. (Motorola Br. at 25–27.)

The Committee contends that the location of material witnesses does not favor transfer to Arizona and the forum selection clause should not be given effect. It argues that the witnesses that Motorola lists as located in Arizona are not material, and the majority of material witnesses are senior employees from Motorola and Iridium who are not located in Arizona. (Comm. Op. at 26 & n. 20.) Further, the Committee argues that the forum selection clause is invalid because it is part of an agreement that was negotiated by Motorola on both sides of the table. (Comm. Op. at 27–28.) The Committee also argues that where the proceeding is core a forum selection clause is irrelevant under § 1412. (Comm. Op. at 26 n. 21.)

Assuming *arguendo* that the forum selection clause is valid, and the location of operative facts underlying this adversary proceeding, the convenience of the parties, the location of witnesses, and the location of documents all favor transfer to Arizona, as Motorola suggests, this Court nevertheless finds that the interests of justice of adjudicating this adversary proceeding in the Southern District of New York, outweigh the other factors favoring denying transfer.

■ The Second Circuit has held that "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *Manville*, 896 F.2d at 1391. Fur-

ther, although there is a strong policy favoring the enforcement of forum selection clauses in this Circuit, this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core. "Transferring a core matter that is not 'inextricably intertwined' with non-core matters adversely impacts the strong public policy interest in centralizing all core matters in the bankruptcy court." *Breeden v. The Ageis Consumer Funding Group Inc. (In re Bennett Funding Group, Inc.)*, 259 B.R. 243, 252 (N.D.N.Y.2001) (holding that where court has already withdrawn the reference of an adversary proceeding, the policy behind centralizing core matters in the bankruptcy court is not applicable); *accord Official Comm. of Unsecured Creditors v. Transpacific Corp. Ltd. (In re Commodore Int'l Ltd.)*, 242 B.R. 243, 261 (Bankr.S.D.N.Y. 1999) (holding that refusing to bind official committee of unsecured creditors to forum selection clause in debtor's contract "promotes strong public interest in centralization of all core matters in the bankruptcy court"); *N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.)*, 221 B.R. 609, 622 (Bankr.D.Mass.1998) ("Retaining core proceedings in this Court, in spite of a valid forum selection clause, promotes the well-defined policy goals of centralizing all bankruptcy matters in a specialized forum to ensure the expeditious reorganization of debtors."); *Mercury Masonry*, 114 B.R. at 39 ("Additionally, enforcement of the forum selection clause would violate the public's interest in centralizing bankruptcy proceedings in the bankruptcy court where the case is pending.").

■ As the court in *Commodore International* held, "[a] debtor-in-possession or trustee, or by implication a committee whose authority derives from them, is not bound by a forum selection clause in an agreement provided the litigation at issue amounts to a core proceeding and is not inextricably intertwined with non-core matters." 242 B.R. at 261 (citing *N. Parent*, 221 B.R. at 620–21). Thus, since this Court has previously found the instant adversary proceeding to be a core proceeding in its entirety then the interests of justice and the public interest in the centralization of all bankruptcy proceedings weigh heavily in favor of denying Motorola's motion to transfer venue. *See Commodore Int'l*, 242 B.R. at 261; *N. Parent*, 221 B.R. at 622; *Mercury Masonry*, 114 B.R. at 39; *see also Manville*, 896 F.2d at 1391 (holding that although the convenience of the parties and witnesses factors weighed in favor of transfer the district court "correctly found other factors relating to the efficient administration of the bankruptcy estate which cut against transferring venue").[3]

Accordingly, this Court denies Motorola's motion to transfer the instant adversary proceeding to the District of Arizona because the interests of justice and the public interest in centralization of bankruptcy proceedings weigh heavily in favor of retaining this core proceeding in the Southern District of New York, where the underlying bankruptcy case is being adjudicated.

*Conclusion*

For the reasons stated above, Motorola's motion to withdraw the reference of the instant adversary proceeding is denied. Further, Motorola's motion to transfer the adversary proceeding to the District of Arizona is likewise denied. The Clerk of the Court is directed to close the case.

**3.** Notably, Motorola does not argue that even if this adversary proceeding is deemed core in its entirety those cases are inapplicable.